## Christian Hacker, John O. Barrett, John J. Walz, William G. Wilcox and Fred C. Wilcox v. R. Munroe & Son.

1. REPLEVIN—*Lies for Goods Obtained by Fraud.*—Where a person obtains the possession of goods by means of false and fraudulent representations concerning his means and financial ability, and with the fraudulent intention of not paying for them, an action of replevin on the part of the vendor will be for the recovery of the goods.

2. CONVEYANCES—*What Does Not Pass—Property Not Attached to Realty.*—Where a person receives a conveyance of land with notice that certain property thereon, but not attached to the realty so as to become a fixture, is claimed by a third person, the title of such property does not pass by the conveyance.

Replevin.—Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed December 10, 1895. See 56 Ill. App. 532.

HILL, HAVEN & HILL, attorneys for appellants; GEORGE S. HOUSE, of counsel.

J. W. D'ARCY and E. MEERS, attorneys for appellees.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This is the same case decided by this court on a former appeal, reversing and remanding, reported in 56 Ill. App. Court Reports, 532.

The verdict and judgment was against the appellants in the court below, same as in former appeal, and the evidence is substantially the same, except that the appellees very much strengthened their case in respect to the representa-

tion that J. D. Lewis, when contracting for the steam boilers in question, made to appellees in regard to the financial abilities of the Lewis Steel Sheet & Tin Plate Company, and also in regard to the falsity of those statements.

The opinion of this court, on the former appeal, contains a full and accurate statement of the case, as then represented, and it will not be necessary for us to repeat it here.

The Steel Sheet & Tin Plate Company was a corporation organized under the laws of the State of Illinois, and was engaged in the construction of a tin plate and steel sheet plant on block eighteen, in Lewistown, Joliet. The company began to build a tin plate mill along in May, 1891. It was partly completed, as stated in the former opinion, in July, of the same year. D. Trevor Lewis was the president, or held some other official position in the company, and in July, 1891, went to Pittsburg, to the office of appellees, manufacturers of steam boilers, and tanks and iron works, for the purpose of buying boilers for his concern, for the mill to be erected in Joliet. He desired estimates, and said he would pay for the boilers " spot cash," and had the estimates made upon that basis. Subsequently, R. Munroe, Jr. a member of the firm, saw J. D. Lewis, president of the company (this was in August, 1891), and had a conversation with him in Lewis' office in Pittsburg, and there closed the contract for the boilers, and was to pay $1,261 cash down, and to give a note for $1,700. In October, 1891, the boilers were shipped to Joliet to the company.

By the agreement, as finally entered into, $1,261 was to be paid down, but nothing was paid on it when the boilers reached Joliet; there was nobody there to receive them. The Steel Sheet & Tin Plate Company was embarrassed and substantially insolvent; had no money to pay for the boilers and nobody there to give the notes, and the company was so utterly destitute of any means it could not pay the freight on the boilers and boiler attachments.

The foundation for the reception of the boilers were partly completed, and one T. M. Creevey, who was then in possession of and owner of block eighteen, or held the title

to it, upon being notified by the railroad company to take the boilers, paid the freight out of his own pocket, had a boiler house built, and placed the boilers on blocking made of timbers supporting the same. The boilers were placed on such timbers some fourteen inches higher than the walls where the legs of the boilers were to rest, and it was impossible to generate steam from the boilers in their condition on block eighteen.

The boilers were placed there by Mr. Creevey, the owner of the lot, for the purpose, as he testified, of saving them for appellees, who had received no pay for them, and that they were not attached to the foundation. This suit of replevin was brought by the appellees, December 21, 1892, to recover the three boilers, smoke stacks and plates. The valves and attachments were not found. There was a count for trover in the declaration to recover the value of those attachments, and a recovery of $180 under the trover counts. The jury found the issues in favor of the plaintiffs on the counts in replevin, and assessed the plaintiff's damages at one cent.

When this case was in court before, we said, " considering all the evidence as to the situation of the property, and respecting the question of intention, we would not be disposed to interfere with the finding of the jury, that those things, not annexed to the real estate, had not become a part of it, nor do we think the filing of the claim for a lien, which was not followed by any suit to enforce it, changed the character of the property."

The same questions are urged here for a reversal on the same points. It is insisted that the boilers were so attached to the realty, that they became a part of it, and could not be replevied, and, also, that the appellees, by filing a claim to enforce a mechanic's lien, lost their right to rescind the contract. We do not think it necessary to go over this ground a second time, but hold that the jury was justified in finding in favor of the appellees on those points, and adhere to our former opinion in that respect.

When the case was here before, we reversed the judg-

ment on the ground that there was no sufficient proof in the record to establish that the Lewis Steel Sheet & Tin Plate Company, by its officers, intended to cheat and defraud appellees at the time the property was purchased, and that it had no intention to pay for the property purchased, at the time. We held that there was no proof from which such intention could be fairly inferred, and that the statements made by J. D. Lewis were not shown to have been false; and that even the statement that the company had $25,000 in bank at Joliet was not shown to have been false, and on those grounds the majority of the court was of the opinion that the judgment should be reversed.

On the present trial, the evidence clearly showed that the Lewis Steel Sheet & Tin Plate Company had no money in any bank in Joliet, to the credit of the company, or anywhere else at the time the representations were made; that the company was hopelessly insolvent, and there was also evidence tending to show that J. D. Lewis told R. Monroe, at the time of the purchase of the goods, that the company had $500,000 of capital stock paid up, and he said they wanted these boilers to bring them out to Joliet to put them in his tin plate mill. In order to get the boilers without paying the agreed cash price, Lewis said that it was all right; that they could pay for the boilers; that they had $25,000 in bank at Joliet, and that it would be all right, and they would pay for them, and signed the contract to pay part cash, and then within an hour or two, asked for time and wanted to give a four months note for half the boilers, and got the extension, and repeated the statement that the concern had $500,000 of paid up capital, and over $25,000 in bank at Joliet after buying the machinery.

The appellees relied upon these representations, as they testified, and shipped the boilers, but never received anything on them, although they frequently demanded it.

The evidence tends clearly to show that, so far as the company having $500,000 of paid up capital, it had no paid up capital, or even subscription to the capital stock; in fact, all

that was found in the vaults of the concern was a lot of circulars advertising the enterprise and some blanks worth nothing. In fact, that the concern was hopelessly and utterly insolvent. The jury was fully justified in believing that the boilers were obtained, as they rendered their verdict, with the intention on the part of the Steel Sheet & Tin Plate Company not to pay for them.

This is the second trial of the case by a jury, each jury returning a verdict on the facts presented in favor of the appellees. We think, under the evidence presented in this record, the jury were justified in so doing, and we do not feel at liberty to reverse the judgment on a question of fact fairly submitted to the jury, more especially as this is the second verdict rendered in favor of appellees on the evidence.

The appellants complain of instructions numbers 6 and 7 given for appellees. We do not think they are erroneous on the points urged—that they do not tell the jury what are fixtures sufficiently, and that they do not fix the time to rescind the contract on the part of the appellees.

Appellants themselves asked for the submission of no such issues to the jury, nor asked instructions on those points. The other instructions were not erroneous. We think the jury were fully and fairly instructed as to the law, and could not have been misled by the instructions. We also think the evidence supports the verdict on the trover counts of $180.

We wish to observe that the appellants failed to show any meritorious defense, or to show that they had any right or title to the boilers in equity or law except the naked possession, having never paid anything for them. On the contrary, the appellees manufactured the boilers and allowed them to go out of their possession on false and fraudulent representations, hoping to be paid for them, and have never received one cent on them.

The appellants submitted some special interrogatories for the jury to answer; the second one is as follows: "At and just before the service of the writ of replevin in this case,

were the defendants in this case the *bona fide* purchasers of the boilers, boiler attachments and fixtures in controversy in this case, and entitled to the possession thereof?" The jury returned an answer of "no." The third special interrogatory was in substance the same as to the possession, and was also answered "no."

We are satisfied that the verdict of the jury on these special interrogatories was also supported by the evidence.

T. M. Creevey had the title to block 18, and placed the boilers thereon, as he testified, to save them for appellees, the sellers, and deeded the block to Mary Lewis as trustee for R. Cook Jinkins, her brother, the boilers then being on the property, knowing they were not paid for. Being an honest man, Mr. Creevey required Mr. Jinkins to give his obligation or agreement that he would pay appellees for these boilers, and this was done as a condition of the conveyance. At this time the Steel Sheet & Tin Plate Company was trying to be re-organized by selling out to Mr. Jinkins. It is true that Mr. Creevey said he claimed title to the land and all that was on it, but he was not proposing to take the boilers for nothing, and required Mr. Jinkins to pay for them.

He certainly did not receive the value of the boilers as consideration for his deed, and at the same time require them to be paid for.

In 1892, Mr. Jinkins came from Wales to Joliet to carry out his agreement, but found the property so incumbered that he could not do so without a larger expense than he had agreed to incur. The appellants were fully aware of the contents of the Jinkins contract, that the boilers had never been paid for, and that appellees had never received any pay for them. The day following the time that appellees notified the Steel Sheet & Tin Plate Company, August 10, 1892, appellants received a quit claim deed from Mary Lewis, the trustee for block 18, with notice, we think the record shows, that appellees were claiming the boilers.

The appellants, so far as the evidence shows, paid nothing for these boilers to Mary Lewis at that time or any other,

nor did they pay any increased price for block 18 on account of the boilers. The jury were then, we think, justified in their special verdict.

The appellants could see at all times, that the boilers were not attached to the realty on block 18, and the only title they appear to have had to them as disclosed by the evidence, was a mere possession of personal property which they had not purchased, but found located on block 18, for which they had received a deed.

Believing that the verdict of the jury is supported by the evidence, that there is no error in the instructions, and that full and complete justice has been done, the judgment of the court below is affirmed.